15-975-cv
*Ferrari v. County of Suffolk*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2015

(Argued: February 4, 2016        Decided: December 27, 2016
Amended: January 4, 2017)

No. 15-975-cv

_____

JAMES B. FERRARI,

*Plaintiff-Appellee*,

-v.-

COUNTY OF SUFFOLK,

*Defendant-Appellant*,

CHRISTINE MALAFI, JOHN DOE, 1-10, INDIVIDUALLY,

*Defendants*.

_____

Before:    LEVAL, LIVINGSTON, AND CARNEY, *Circuit Judges.*

       Defendant-Appellant County of Suffolk appeals from a final judgment, entered on March 2, 2015, in the United States District Court for the

1

Eastern District of New York. The district court (Seybert, *J.*) granted summary judgment in favor of Plaintiff-Appellee James B. Ferrari as to liability on his claim that his right to procedural due process was violated at a post-seizure hearing at which it was determined that his 2003 Ferrari, seized in connection with his arrest for driving while intoxicated, should remain impounded pending a forfeiture action. After a trial on damages alone, the jury returned a verdict in favor of Plaintiff-Appellee in the amount of $95,000. We conclude that the district court erred in interpreting our decision in *Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002), not to permit a municipality to retain a vehicle for public safety reasons in appropriate cases. We also conclude that at a post-seizure hearing to determine whether a vehicle should be returned to a title-owner *pendente lite*, the Due Process Clause permits Suffolk County, after making out a prima facia case that retention is necessary to protect its interests, to shift the burden of going forward onto the title owner to identify an alternative measure that would satisfy the municipality's interests. In light of these determinations, we conclude that the district court erred in granting summary judgment to Ferrari and in not granting summary judgment to Suffolk County. We **REVERSE** and **REMAND** with instructions to enter judgment in favor of Suffolk County.

> ANDREW J. CAMPANELLI, Campanelli & Associates, P.C., Merrick, New York, *for Plaintiff-Appellee*.
>
> L. ADRIANA LOPEZ, Assistant Suffolk County Attorney (Christopher M. Gatto, Assistant Suffolk County Attorney, *on the brief*), for Dennis M. Brown, Suffolk County Attorney, Hauppauge, New York, *for Defendant-Appellant*.

DEBRA ANN LIVINGSTON, *Circuit Judge*:

On May 26, 2009, James Ferrari, drunk, and high on prescription medication, was arrested for speeding wildly down a road in Suffolk County at over 100 miles per hour — driving a 2003 Ferrari Coupe. Shortly after the arrest,

2

the County impounded the Ferrari pursuant to Suffolk County's "DWI Seizure Law," a provision "specifically [and exclusively aimed] at repeat offenders of New York's drunk driving laws." Suffolk County Local Law No. 7-2004 § 1 (2004). At a subsequent hearing to determine whether the vehicle should be released to Ferrari pending an ultimate finding that it was forfeitable, the County presented to the neutral magistrate undisputed evidence of Ferrari's arrest. The County also presented evidence of his long history of traffic violations, including both a prior conviction for driving while intoxicated and an abundance of license suspensions. Ferrari himself did not appear or offer any evidence at that hearing; instead, his counsel's only argument was that the magistrate should return the car to Ferrari as the County had not satisfied its obligation, under the Due Process Clause of the Fourteenth Amendment, of showing that retention of the vehicle *pendente lite* was warranted, as it had not introduced evidence in its prima facia case that an alternative measure, such as a bond, would be insufficient to meet the County's interests. After a neutral magistrate ordered that the vehicle be retained by the County, Ferrari filed a claim under 42 U.S.C. § 1983, alleging that Suffolk County, in retaining his vehicle *pendente lite*, deprived him of due process. The district court agreed and granted summary

3

judgment to Ferrari, who was thereafter awarded $95,000 by a jury at a trial that was limited to damages alone.

We conclude that, at a post-seizure hearing to determine whether a vehicle should be returned to a title owner *pendente lite* pursuant to Suffolk County's DWI Seizure Law, the Due Process Clause permits Suffolk County, after making out a prima facia case that retention is necessary to protect the County's interests in the financial value of the vehicle and/or in protecting the public from continued unsafe and illegal driving, to shift the burden of going forward to the title owner to identify an alternative measure that would satisfy the County's interests. In light of this holding, we reverse the district court's grant of summary judgment to Ferrari and remand with instructions to enter judgment in favor of the County.

## I. Factual Background

On May 26, 2009, James Ferrari (the "Plaintiff") was driving his 2003 Ferrari Coupe westbound on South Country Road in Bellport, New York, at a speed in excess of 100 miles per hour, swerving wildly across the double-yellow line. After observing Ferrari's Ferrari zoom past, a Suffolk County police officer pulled the Plaintiff over. As he approached, the officer noted that the Plaintiff's "breath smelled strongly of [alcohol, that] his eyes were bloodshot, . . . and [that]

4

his gait was unsteady." J.A. 234. As the officer would later attest in the subsequently filed felony complaint, Ferrari explained, through "slurred" speech, that he was on thirteen prescribed medications. *Id.* At the station, Ferrari refused to submit to a chemical test. After the police officers located crack cocaine on his person, however, Ferrari reportedly admitted "the crack pipe's mine." *Id.* He was subsequently charged with three counts of felony driving while intoxicated[1] and misdemeanor criminal possession of a controlled substance in the seventh degree, *see* N.Y. Penal Law § 220.03. On September 27, 2010, Ferrari pled guilty to all of the charges and received a sentence of five years' probation with a three-year revocation of his driver's license. As it would later come out, these three felony convictions were just the tip of the iceberg. Ferrari's history of reckless driving included a prior conviction for driving while intoxicated on April 26, 2007; a conviction for unlicensed operation of a motor vehicle on April 24, 2006; a conviction for driving while impaired on June 13, 2005; and numerous temporary suspensions and revocations of his driver's license.

---

[1] Namely, violations of New York Vehicle and Traffic Law § 1192.3 (driving while intoxicated); § 1192.4 (driving while impaired by drugs); and § 1192.4a (driving "while ability impaired by the combined influence of drugs or of alcohol and any drug or drugs").

5

Shortly after Ferrari (the Plaintiff's) arrest, his Ferrari (the car) was temporarily impounded pursuant to Suffolk County Code Chapter 270 pending a post-seizure hearing to assess the appropriateness of continued retention.[2] Suffolk County's vehicle forfeiture law, named the "DWI Seizure Law" by the county legislature, addresses the circumstances wherein the County may seek forfeiture of a vehicle initially seized pursuant to a violation of New York State's laws against intoxicated or reckless driving. Suffolk County Local Law No. 7-2004 § 1 (2004). The scope of Suffolk County's DWI Seizure Law is narrower than laws adopted by some other New York municipalities. The DWI Seizure Law permits forfeiture only (a) when the vehicle was an instrumentality of a specifically enumerated, serious crime, *and* (b) the driver involved has at least one prior conviction for such a crime. *See, e.g.*, Suffolk County Code Ch. 270-27 (A), (D) (enumerating the list of applicable crimes, including driving while intoxicated, aggravated driving while intoxicated, driving while impaired by drugs, and reckless driving, but not including driving while simply impaired); *compare Krimstock v. Kelly*, 306 F.3d 40, 44 (2d Cir. 2002) ("*Krimstock I*") (observing

---

[2] In this opinion, we reference the version of Suffolk County's vehicle forfeiture law as it existed at the time of the retention hearings in this case, and as it appeared in the record at summary judgment. At that time, the law was codified in Chapter 270 of the Suffolk County Code. The law, though materially indistinguishable, now appears in Chapter 420 (addressing "Drug Premises and Property"). *See* Suffolk County Code Ch. 420, *available at* http://ecode360.com/14945224.

that the New York City forfeiture provision at issue in that case permitted, on the basis of a first offense, "seiz[ure of] a motor vehicle following an arrest for the state-law charge of driving while intoxicated . . . or any other crime for which the vehicle could serve as an instrumentality"); *Cty. of Nassau v. Canavan*, 1 N.Y.3d 134, 138 (2003) (noting that Nassau County's forfeiture provision permitted forfeiture of a vehicle after a first offense, and permitted seizure of vehicles used to commit "misdemeanor crime[s] or petty offenses" (quoting Nassau County Administrative Code § 8-7.0(g)(1)(d) (2003)). The Suffolk County Legislature amended the law in 2004 to "maintain the statute's effectiveness and assure consistency with the federal and state constitutions and recent court decisions." Suffolk County Local Law No. 7-2004 § 1 (2004). The legislature found that the law "was aimed specifically at repeat offenders of New York's drunk driving laws," that it had "proved to be [a] strong deterrent to drunk drivers," and that "many groups of concerned citizens have credited [it] with saving lives." *Id.*

The DWI Seizure Law addresses when the state may seek forfeiture of a vehicle and what the state must show at the ultimate forfeiture hearing to take possession of the vehicle. The law also affords to owners like Ferrari a prompt, post-seizure hearing to determine whether the County may retain the vehicle

7

*pendente lite* (pending the outcome of a valid forfeiture proceeding). *See* Ch. 270-26(B); *see also Krimstock I*, 306 F.3d at 70 (holding, in the context of New York City's forfeiture provision, that the Due Process Clause requires the City to afford interested parties a prompt, post-deprivation hearing, at which they may "test the probable validity of the City's deprivation of their vehicles *pendente lite,* including probable cause for the initial warrantless seizure"). The Suffolk County seizure law specifically provides for

> a hearing promptly scheduled before a neutral Magistrate to determine whether probable cause existed for the defendant's warrantless arrest, whether the County is likely to succeed on the merits of the forfeiture action, whether retention is necessary to preserve the vehicle from destruction or sale during the pendency of the forfeiture proceeding, and whether any other measures would better protect the County's interest during the proceedings, including, but not limited to: (a) [i]ssuance of a restraining order prohibiting the sale, transfer, or loss of the vehicle with imposition(s) of appropriate penalties for violation of said restraining order; (b) [t]aking of a bond; and/or (c) [u]se of an interlock device.

Ch. 270-26 (B)(1); J.A. 143.[3]

---

[3] Though only indirectly at issue in this case, the DWI Seizure Law also contains two significant forms of relief to prevent forfeiture or retention *pendente lite* where either would impair the rights of innocent owners or work an undue hardship. First, it contains various provisions designed to prevent forfeiture or retention of vehicles belonging to "innocent owners," *see, e.g.,* Ch. 270-27(A)(1) ("No property used by any person as a common carrier in the transaction of business as a common carrier shall be forfeited under the provisions of this subsection unless it shall appear that the owner or agent of the owner was a consenting party or privy to the commission of the offense . . . ."); Ch. 270-27(A)(2) ("No property shall be forfeited . . . by reason of any act or omission established by the owner thereof to have been committed or omitted by any person other than the owner while the subject property was unlawfully in the possession of a person other than the owner."); Ch. 270-27(J) ("In order to establish its case in any action commenced under this article, the County shall demonstrate, by clear and convincing evidence, that the property in question is subject to forfeiture at the time of commission of the offense . . . .

On June 9, about two weeks after the seizure, Ferrari's counsel appeared alongside the Assistant County Attorney for a hearing before retired state Supreme Court Justice John DiNoto ("Judge DiNoto") to address whether the County could retain Ferrari's vehicle pending the outcome of the forfeiture proceeding. After Judge DiNoto expressed concerns about conducting the hearing without the Plaintiff present, Ferrari's counsel argued that Ferrari's presence was unnecessary. In his estimation, the law did not require Ferrari himself to provide evidence as to any point or otherwise make any affirmative presentation to succeed. Ferrari's counsel argued that:

> under the Federal Court holding of *Krimstock*[ *v. Kelly*], this Court may not, as being barred by the United States Constitution, permit the County to maintain continued retention of the motor vehicle in the absence of [the County] establishing: A, the probable validity of

The noncriminal defendant shall then have the burden of proving a lack of knowledge or lack of consent on behalf of said noncriminal defendant sufficient to constitute a defense to such forfeiture."); *compare Krimstock I*, 306 F.3d at 57 ("A statute that authorizes the police to seize property to which the government has not established a legal right or claim, and that on its face contains no limitation of forfeiture liability for innocent owners, raises substantial constitutional concerns."); *Canavan*, 1 N.Y.3d at 143 (observing that "[t]he absence of [a defense of innocent ownership] in the challenged [provision] . . . renders the ordinance, as written, unconstitutional").

Second, the law also contains various forms of "hardship" relief. Language in the law permits a neutral magistrate to decline to "order a forfeiture when it determines, in its discretion, that it is in the interests of justice not to do so." Ch. 270-29(B). Evidence provided at summary judgment indicated both: (1) that magistrates in Suffolk County have provided defendants, including not just innocent co-owners of vehicles but also criminal defendants, the opportunity to argue that retention or forfeiture would cause them undue hardship; and (2) that a vehicle may be released during the pendency of proceedings upon a showing of such hardship. *See, e.g.*, J.A. 64-65, J.A. 422; *see also Prop. Clerk of Pol. Dep't. of City of N.Y. v Harris*, 9 N.Y.3d 237, 243–44, 249 (2007) (holding that due process requires that a municipality provide a co-owner of a vehicle, who is not the criminal defendant, the opportunity to appear at a retention hearing to argue retention is unwarranted, but that, if the municipality makes out a prima facia case for retention at that hearing, the co-owner then bears the burden of "prov[ing] . . . that she was an innocent co-owner who would suffer a substantial hardship due to continued impoundment").

the initial seizure. [B, t]he validity of the continued retention and [C,] that something short of continued retention, such as an order regarding the removal of the car under the jurisdiction would not suffice.

J.A. 45-46. He further explained that, because the County in his view bore the burden of introducing evidence, in its affirmative presentation, proving that alternative measures would not suffice to meet its interests, Suffolk County could not prevail without providing evidence that "the [Ferrari would] be removed from the jurisdiction or destroyed" absent retention. J.A. 42. The Assistant County Attorney responded, *inter alia*, that her "understanding of . . . *Krimstock* is entirely different th[a]n Counsel's," but did not specify that understanding. J.A. 47. Judge DiNoto, citing the importance of witness credibility to resolving "the issues that the [forfeiture] statute raises and considers," adjourned the hearing and informed Ferrari's counsel that his client had to be present. J.A. 43.

On September 1, 2009, another lawyer appeared on behalf of Ferrari, who again did not appear. After a brief colloquy discussing whether Ferrari needed to be present, Judge DiNoto permitted the hearing to go forward without him.[4]

---

[4] In particular, the parties appeared to debate the relevance of Ferrari's testimony to whether he could prove "hardship." The County observed that if Ferrari were "not here to testify, he can't show a hardship, therefore, he does have the burden under the statute to show hardship and should be present." J.A. 60. Ferrari's counsel responded that "[t]here is no requirement on [Ferrari's] part [under the forfeiture law] that [he] provide any evidence of a hardship." J.A. 61. The topic of whether Ferrari could demonstrate hardship came up at several points during the hearing. For instance, the Assistant County

10

Ferrari's counsel again began with his understanding of the law: "We believe that the County will not be able to prove i[ts] burden — that retaining the vehicle is necessary and that other methods would not be more proper for the County's safety such as posting a bond." J.A. 59. He did not contest that the evidence established some danger to the public were Ferrari to receive back his vehicle, but argued that the County had the burden "to produce evidence that the issuing [of a] restraining order prohibiting sale, transferring a loss of the vehicle with imposition of appropriate penalty for violat[ing] such restraining order, the taking of the bond and/or the use of an interlock device could not suffice for this." J.A. 60-61. In the estimation of Ferrari's counsel, the Due Process Clause established conclusively that "[i]t is solely the County's burden to show that those other avenues are not sufficient . . . ." J.A. 61. To this end, he did not introduce any evidence or even make a proffer of evidence in regards to what, if any, alternative measures might be feasible.

The Assistant County Attorney then made her case: she introduced various documents into the record, including the Felony Complaint (detailing the circumstances of Ferrari's arrest), the Alcohol and Drug Influence Report,

Attorney observed that "Ferrari has another vehicle . . . a Land Rover . . . [and] therefore, there is no hardship by Mr. Ferrari to use that vehicle." J.A. 64-65.

11

evidence that Ferrari refused to submit to a chemical test at the station, his Abstract of Driving Record, and a Certificate of Disposition of his prior conviction for DWI. Cumulatively, the documentation detailed Ferrari's storied and dangerous driving history and demonstrated that he was the title holder of the seized car. Later, in her summation, the Assistant County Attorney explained why the evidence she had introduced suggested retention *pendente lite* was necessary to protect the County's interests:

> This is a Ferrari that we're speaking about. In order for the County to maintain this vehicle in the state that it was taken at the time of the seizure, and based on his driving record which is in the abstract, your Honor, there is speeding. There [were] other tickets warranted. The County believes that this vehicle would be damaged or even removed from the state if it was allowed to go back to the owner.

J.A. 69. She further stated that

> [a]dditionally, based on his prior conviction, which was only in 2006, there's obviously a problem with Mr. Ferrari. Therefore, the County believes that a bond, a restraining order, or any of the other means available to [it], in this particular case, would not maintain this vehicle in the manner and in the form that it was taken when it was seized.

J.A. 69-71. Asked whether *Krimstock I* placed the burden on the County to establish the necessity of retention, the County answered

> yes, [*Krimstock I*] talks to the County to make that burden, but the County has sustained that burden and there is nothing to refute it by

12

Mr. Ferrari or his attorney in testimony form or evidentiary form to allow this Court to determine that the County should not retain it any further.[5]

J.A. 71. Ferrari's counsel, after declining to come forward with evidence of any sort, summed up. He did not suggest that the evidence failed to establish that Ferrari was a reckless driver with a repeated history of drunken driving convictions.[6] Nor did he even argue that particular alternative means, specific to his client's situation, would address the County's interests. Instead, he asserted that the County had not met its constitutionally-imposed burden to show the car should be retained *pendente lite* in the absence of evidence that "[the] taking of a bond, taking photographs, putting an interlock device on it, will not suffice for satisfying the need for retention." J.A. 67. After Ferrari's counsel and the

---

[5] When asked about the significance of our holding in *Krimstock I* to the relevant burdens at this hearing, the Assistant County Attorney initially replied that "*Krimstock* is the case which deals with lenders — the lien-holders being notified as to the post seizure hearing notices. . . . [T]here is no lien-holder in this particular case, so the application they're referring to is dicta." J.A. 71. In this response, she appeared to confuse *Krimstock I* with *Ford Motor Credit Co. v. NYC Police Dep't*, 503 F.3d 186, 188, 192 (2d Cir. 2007) (holding that, in the context of New York City's forfeiture provisions, a lien-holder on a car must be "permit[ted] . . . to participate in forfeiture proceedings"). Her later discussion of where *Krimstock I* placed the burden suggested that she may have realized her error, though the question is ultimately not relevant to our disposition in this case.

[6] At oral argument before this Court, Ferrari's counsel observed that the existence of a second car, a Land Rover, undermined any argument that release of the Ferrari itself back to Ferrari (its driver) could endanger the public as (or so the argument goes) the public would be in just as much danger in any case given the availability of the other car. The district court also alluded to this argument in its denial of Suffolk County's motion to dismiss. S.A. 21 (observing that a Land Rover is larger and thus there might be an argument that providing Ferrari the vehicle might, presumably, encourage him to recklessly drive *that lighter* car and thus hurt fewer people in a hypothetical accident). Putting aside whether this argument is compelling (or not) as a factual matter, Ferrari's counsel did not raise it in front of Judge DiNoto.

13

County concluded their summations, Judge DiNoto ruled that Suffolk County would "retain the vehicle pending resolution of a forfeiture proceeding." J.A. 72.

On September 11, 2009, the County commenced a civil forfeiture action for the vehicle. On June 29, 2010, Ferrari was convicted on the basis of his guilty plea on all charges. In a stipulation of settlement dated June 1, 2012, he surrendered title of the 2003 Ferrari to Suffolk County. The parties do not dispute the validity of these convictions or this judgment of forfeiture. They dispute only the sufficiency of the process afforded at Ferrari's post-seizure hearing to determine whether, prior to forfeiture, the vehicle could be retained.

## II. Procedural History of the Present Suit

On September 16, 2010, Ferrari asserted claims under 42 U.S.C. § 1983 against Suffolk County, the Suffolk County Attorney, and unidentified individuals allegedly responsible for training hearing officers and assistant county attorneys, alleging violations of his procedural and substantive due process rights in connection with the retention of his Ferrari *pendente lite*. On November 4, 2010, Defendants moved to dismiss for failure to state a claim, and on June 7, 2011, the District Court for the Eastern District of New York (Seybert,

*J.*), granted in part and denied in part that motion. *See Ferrari v. Cty. of Suffolk*, 790 F. Supp. 2d 34 (E.D.N.Y. 2011).

The Court granted the motion as to the individual defendants, but denied it as to the County. As relevant here, the district court determined that Ferrari had successfully pled a procedural due process violation arising from the County's alleged failure to meet its burden at Ferrari's hearing of providing evidence sufficient to show that retention *pendente lite* was necessary to protect the County's interests.[7] In so holding, the district court rejected the County's argument that evidence showing that retention was necessary to safeguard the public from the risk that Ferrari would again recklessly drive his car could be considered. While public safety concerns are germane pursuant to Suffolk County law, the district court concluded, this Court's decision in *Krimstock I* permits the County to justify retention solely by showing that retention is necessary to protect the County's *financial* stake in the car. *See* S.A. 10-11

---

[7] The district court also determined: (1) that there was no legal justification for Judge DiNoto's conclusion that the initial hearing could not take place without Ferrari present, and thus that Ferrari had adequately pled a denial of his right to a prompt post-seizure retention hearing (as Judge DiNoto's decision resulted in delay of the hearing by several months); and (2) that Ferrari had pled a procedural due process violation arising out of Judge DiNoto's alleged failure to make sufficient findings on the record as to two of the three *Krimstock* prongs: likelihood of success at the ultimate forfeiture proceeding and the necessity of retention, discussed herein. Upon the parties' subsequent cross motions for summary judgment, however, the district court awarded summary judgment in favor of the County as to these two claims, determining pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978), that Ferrari had failed, as a matter of law, to raise a material issue of fact as to the existence of an official policy or custom. Ferrari has not challenged these determinations and we do not address these claims.

(holding that "a plain reading of *Krimstock* [*I*] does not permit a municipality to retain vehicles for public safety reasons, when such retention is not 'necessary' to protect the municipality's interests in ultimately obtaining the vehicle's forfeiture").[8]  Referring to the hearing transcript, which was attached to and relied upon in the Plaintiff's complaint, the district court next acknowledged that "the County [had] argued that Ferrari might damage the vehicle through continued reckless or impaired driving."  S.A. 16.  But the district court then observed that, even if this evidence might demonstrate that there was indeed danger of property destruction in releasing the vehicle back to Ferrari, the County had failed to produce evidence "showing that [Ferrari was] unable or unwilling to post a bond, and/or lack[ed] other assets that could be easily restrained."  S.A. 16 (quoting *Boyle v. Cty. of Suffolk*, 10-CV-2606, 2010 U.S. Dist. LEXIS 114487, at \*14-15 n.6 (E.D.N.Y. Oct. 19, 2010)).  In other words, the district court effectively determined that the Due Process Clause required the County as part of its prima facia case not only to introduce evidence showing that Ferrari

---

[8] Despite stating that "a plain reading" was possible, the district court acknowledged that *Krimstock I* was hardly clear in this regard.  *See* S.A. 11 n.6 ("express[ing] no opinion about the merits [of such a standard,]" and noting that "[p]erhaps the Second Circuit should clarify the appropriate standard, if this issue reaches it again").

16

was liable to destroy the car if he received it back, but also to prove that alternative measures would not suffice to protect the County's financial interests.

On November 26, 2012, after extensive discovery, the County filed its motion for summary judgment, and on December 10, 2012, the Plaintiff cross-moved for summary judgment solely on the issue of liability. In order to demonstrate that the County, the sole remaining defendant, was liable for any alleged constitutional violations at the hearing, the Plaintiff attached to his cross-motion eleven transcripts from other retention hearings that took place in Suffolk County between April 2007 and September 2010, four written determinations from hearing officers (only two of which were accompanied by transcripts), and the deposition testimony of the County attorney describing her training. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) ("Under the standards of *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality can be held liable under Section 1983 [only] if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality.").

The district court granted in part and denied in part both motions, and in the process substantially narrowed the issues in this case.[9] The district court first addressed and rejected the County's argument that the availability of appeal from Judge DiNoto's determination via Article 78, *see* N.Y. C.P.L.R. § 7801 (permitting appeal of certain administrative determinations in New York State), an appeal Ferrari at no point pursued, cured any due process problems at the hearing.[10] S.A. 48-49.

Next, the district court concluded that Ferrari had shown, as a matter of law, that the County routinely fails to meet its burden of showing necessity of retention. The district court acknowledged that the record demonstrated that the County systematically introduces evidence at its post-seizure hearings sufficient to establish that the vehicle in question was used as the instrumentality of a serious offense, as well as evidence that the driver had previously been convicted of a parallel offense and, where applicable, had an otherwise infamous driving record. Further, evidence at Ferrari's hearing, as well as at other Suffolk County

---

[9] As already noted, the district court granted summary judgment to the County on all of Ferrari's procedural due process claims, save the one discussed herein. The court also granted summary judgment to the County as to a substantive due process claim which Ferrari has not further pursued, and which we do not address.

[10] The County argues, on appeal, that the district court was incorrect to conclude that the availability of Article 78 relief was not sufficient to cure any due process deficiency at Ferrari's hearing. We need not reach this question.

18

hearings in similar car forfeiture proceedings, suggested that the County understood this evidence to demonstrate that the driver in question posed a danger to the public and to the car.[11] After the County introduced this evidence, the opposing party—at many of the hearings in the record a purportedly innocent co-owner—would generally testify to hardships she would face should the vehicle be retained, and in many cases also propose alternative measures to retention which the County and the magistrate would then address.[12] Nevertheless, though the County introduced evidence probative of necessity at these hearings, and though alternative measures, if raised by the title owner, would indeed receive discussion, the district court observed that the County itself did not raise the subject of alternative measures in its prima facia case or introduce evidence specifically addressing such measures (such as evidence of the financial capacity of the title owner to pay a bond). Finding that due process

---

[11] *See, e.g.*, J.A. 1363 (in which, at another hearing, the county attorney argued that "[b]ased on the risk to the public at large, [the defendant] should not be driving and returning his vehicle is not appropriate"); J.A. 69-71 ("[B]ased on his prior conviction . . . there's obviously a problem with Mr. Ferrari.").

[12] *See, e.g.*, J.A. 1147, 57 (at which, after the state had rested, the mother of the driver testified as to her ability to keep the car away from her son (the DWI driver), and the magistrate declined to order the car released to her noting, *inter alia*, that "[o]ur concern here is that if it's returned to you that you'll turn it over to your son"); *see* J.A. 853-83 (at which, after the state had rested, the driver testified that he would be willing to have an interlock device placed on his car if permitted to retain it, the County asked questions to assess whether this device would suffice to prevent the driver from again driving the car intoxicated, and the magistrate, after acknowledging that the driver's prior conviction was well in the past, ultimately released the vehicle to the driver subject to that stipulation).

required the County to submit such evidence, apparently regardless whether the title owner argued that such measures were feasible, the district court awarded summary judgment to Ferrari on this claim.[13]

For the reasons that follow, we reverse.

### III. Discussion

### A.

The County makes two arguments in support of reversal.[14]  First, the County argues that the district court erred in holding that *Krimstock I* forecloses the County from demonstrating, at a retention hearing, that retention *pendente lite* is necessary for purposes of public safety, unless retention is also necessary to

---

[13] The district court awarded summary judgment as to liability only.  After this award, the district court transferred the case to Magistrate Judge Gary Brown to resolve any remaining issues prior to a jury trial on the question of damages.  After a series of contested evidentiary rulings and a trial as to damages, a jury awarded Ferrari $95,000 in compensation for the deprivation of his Ferrari Coupe during the period from September 1, 2009, to June 1, 2012.  On appeal, the County argues, *inter alia*, that Judge Brown erroneously precluded the County from proving, at trial, that even had the County been held to its burden on necessity, the outcome (retention of the vehicle) would have been the same.  *See Brody v. Village of Port Chester*, 345 F.3d 103, 112–13 (2d Cir. 2003) (noting that, though nominal damages may be awarded for any violation of due process rights, "compensatory damages would be appropriate only where the plaintiff could demonstrate that he had suffered some injury as a result of the denial of due process, such as by showing that the outcome would have been different had process been afforded" (citing *Carey v. Piphus*, 435 U.S. 247, 266-67 (1978)).  Because we reverse the district court's grant of summary judgment on the issue of liability, we need not assess this argument.  Nor need we address the County's remaining challenges to the dispositions below.

[14] We review the district court's grant of summary judgment *de novo*, "resolving all ambiguities and drawing all permissible factual inferences in favor of the party against whom summary judgment is sought." *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010) (quoting *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009)).

20

protect the County's financial interest in the vehicle. Second, the County argues that, in presenting evidence at Ferrari's hearing of his repeated serious driving violations, it successfully met its burden of establishing a prima facia case for the necessity of retention. Because both parties rely extensively on our holding in *Krimstock I* and on the line of cases that followed, we begin with a review of this case law.

In *Krimstock I*, we assessed a specific forfeiture statute in New York City that authorized the City to seize a vehicle after a warrantless arrest and to seek forfeiture of the vehicle on the basis that it was used in the commission of a single offense (usually driving while intoxicated, but not exclusively). *See Krimstock I*, 306 F.3d at 43-44. We held that the forfeiture law violated the Due Process Clause of the Fourteenth Amendment because it did not afford claimants, including potentially innocent title owners, a prompt, post-seizure opportunity to test the probable validity of the retention of their vehicles *pendente lite*. *See id.* at 70 ("In conclusion, we hold that promptly after their vehicles are seized under N.Y.C. Code § 14–140 as alleged instrumentalities of crime, plaintiffs must be given an opportunity to test the probable validity of the City's deprivation of their vehicles *pendente lite*, including probable cause for the initial

21

warrantless seizure."). We analyzed the process due using the three-part test articulated by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976) (weighing the private interest a party has in a given procedure; the risk of error created, or mitigated by, a particular procedure; and the state's interest in that particular procedure (or in eschewing a particular procedure)). *Krimstock I*, 305 F.3d at 67.

Beginning with the private interest, we emphasized that the owner of a seized vehicle has a significant interest in using that vehicle "as a mode of transportation and, for some, the means to earn a livelihood." *Id.* at 61. We noted showings made by plaintiff-owners in that case of their needs for their vehicles, and the hardships they would suffer without them. We also emphasized the particular importance of providing innocent owners an opportunity to demonstrate, earlier than at an ultimate forfeiture hearing, that forfeiture was not warranted, *see id.* at 55-58, and noted that the lack of "availability of hardship relief" in New York City's forfeiture statute further weighed in favor of requiring a prompt hearing, *see id.* at 61.

Assessing the risk of erroneous deprivation in the absence of a prompt hearing, we acknowledged "that the risk of erroneous seizure and retention of a

vehicle is reduced in the case of a DWI owner-arrestee, because a trained police officer's assessment of the owner-driver's state of intoxication can typically be expected to be accurate," *id.* at 62, but we also emphasized, *inter alia*, the risk that innocent title owners would have their vehicles erroneously retained *pendente lite* absent the ability to swiftly challenge the justification for forfeiture, *see id.* at 63-64.

We also addressed the City's interests. We noted that its "most compelling [interest] . . . [was its interest in] prevent[ing] a vehicle from being sold or destroyed before a court [could] render judgment in future forfeiture proceedings," *i.e.*, its financial interest.[15] *Id.* at 64. We next addressed the City's argument that it had an interest in "prevent[ing] the offending [vehicle] . . . from being used as an instrumentality in future acts of driving while intoxicated." *Id.* at 66. This interest was insufficient to justify *the complete lack of* a prompt, post-seizure hearing pending the final judgment of forfeiture, we held, for a number of reasons, including that the driver might have been arrested for a single, less serious offense that did not necessarily present a significant risk of future inebriated driving. *See id.* ("While initial seizure of a vehicle serves the

---

[15] We observed, as well, that "[t]he need to prevent forfeitable property from being sold or destroyed during the pendency of proceedings does not necessarily justify continued retention of all vehicles when other means of accomplishing those goals are available." *Id.* at 65.

constructive purpose of keeping an individual from driving in an inebriated condition, that purpose *often loses* its basis in urgency once the individual has regained sobriety on the morrow." (emphasis added)). But "[a] claimant's proven history of persistent drunkenness or repeated DWI violations . . . might justify a fact-finder [at that hearing] in denying release of the vehicle *pendente lite*."[16] *Id.* n.28. In other words, *Krimstock I* did not hold that retention could not be ordered *pendente lite* on the basis that return of the vehicle would pose a danger to the public; we held only that a hearing was necessary to determine whether, in any given case, retention would indeed be justified on that basis.

Having analyzed the relevant interests involved, as well as the risk of error associated with the City's procedures, we held that the Due Process Clause requires

> that claimants be given an early opportunity to test the probable validity of further deprivation, including probable cause for the initial seizure, and *to ask* whether other measures, short of continued impoundment, would satisfy the legitimate interests of the City in protecting the vehicle from sale or destruction *pendente lite*.

---

[16] We also noted that New York City's *specific* interest in safety was weakened by evidence that suggested that the City only sought civil forfeiture of vehicles "that might yield an attractive price at auction." *Id.* at 66; *see also id.* at 67 (observing that "the City's interest in safety cannot be paramount if it seeks to remove from the road only a lucrative subset of the vehicles seized from intoxicated drivers").

*Id.* at 68 (emphasis added). We explicitly declined to determine the precise procedural contours of this hearing. *See id.* at 68-69 (observing that "[t]here is no universal approach to satisfying the requirements of meaningful notice and opportunity to be heard in a situation such as this"). Instead, we left explication of these contours to "the district court, in consultation with the parties." *Id.* at 69. We did, however, articulate several minimum requirements for this procedure, holding that "the hearing must enable claimants to test the probable validity of continued deprivation of their vehicles, including the City's probable cause for the initial warrantless seizure," *id.*, and that "the retention hearing [should] allow the [neutral magistrate] to consider whether less drastic measures than continued impoundment, such as a bond or a restraining order, would protect the City's interest in the allegedly forfeitable vehicle."[17] *Id.* at 70. We did not, at any point, describe the necessary allocations of any burdens of persuasion or production at this hearing, or otherwise elucidate what evidentiary showing would be sufficient for New York City to justify retention *pendente lite*.

---

[17] *But see id.* at 69-70 ("[T]he retention hearing [is not] a forum for exhaustive evidentiary battles that might threaten to duplicate the eventual forfeiture hearing. . . . [D]ue process should be satisfied by an initial testing of the merits of the City's case." (footnote omitted)).

25

When the case was remanded to the district court, it created what has become the procedure New York City follows for so-called *Krimstock* hearings, including the following:

> Such a hearing will provide the claimant with an opportunity to be heard, either in person or through counsel, as to three issues: whether probable cause existed for the arrest of the vehicle operator; whether it is likely that the City will prevail in an action to forfeit the vehicle[;] and whether it is necessary that the vehicle remain impounded in order to ensure its availability for a judgment of forfeiture. The burden of proof by a preponderance of the evidence as to these issues will be upon the Police Department . . . .

*Krimstock v. Kelly*, 99 Civ. 12041 (MBM), 2005 U.S. Dist. LEXIS 43845 at *3-4 (S.D.N.Y. Nov. 29, 2005) (Second Amended Order and Judgment) ("*Krimstock II*"); *see also Krimstock v. Kelly*, 464 F.3d 246, 249 (2d Cir. 2006) ("*Krimstock III*") (describing this process). We affirmed this process. *See Jones v. Kelly*, 378 F.3d 198, 202 (2d Cir. 2004). However, we did so without analysis, and for the sole reason that the City, which had participated in creating the contours of the hearing, did not challenge the district court's remedy. *See id.* (observing solely that "[t]he City notes that it has no quarrel with the district court's resolution of our mandate" in the context of vehicles seized as instrumentalities of crime). Thus, even to the degree that the order in *Krimstock II* could be construed as laying out the burdens of persuasion or production for New York City retention

26

hearings in regard to the narrow issue of the sufficiency and availability of alternative measures (a question we need not decide), we have never held that this process is indeed the only one due process permits at such a hearing.[18]  *See id.* at 204.

In the years since *Krimstock I*, the New York Court of Appeals also addressed the necessity of a prompt, post-seizure retention hearing and the relevant interests of a municipality in retention *pendente lite*.  In *Canavan*, the New York Court of Appeals, assessing the forfeiture provision in Nassau County, which permitted impoundment of any "instrumentality of a crime" on the basis of a single offense, held that due process required a prompt, post-seizure hearing of the kind contemplated in *Krimstock I*.  1 N.Y. 3d at 138, 144-45.  Assessing the County's interests under a *Mathews* analysis, the Court of Appeals emphasized that "[o]f course, retention of an intoxicated driver's car pending resolution of

---

[18] We further note that Ferrari's assumption, at times shared by the district court, that the procedural requirements articulated in *Krimstock II* necessarily constitute the minimum constitutional requirements at any retention hearing in any municipality pursuant to any forfeiture law ignores the context of this order.  *See, e.g.,* Ferrari Br. at 3.  The district court in *Krimstock II* fashioned a process for New York City—a process created in consultation with the parties in *Krimstock I*, and in reflection of the specific forfeiture law at issue.  There is no reason to suppose, without further analysis, that every procedural requirement articulated in that order must be followed by other municipalities which did not have the opportunity to participate in crafting that order or to consent to it, and whose laws are not (as is the case here) the same as the law at issue in *Krimstock I*.  That one municipality has adopted a particular procedure to comport with its obligations under the Due Process Clause does not, *a fortiori*, render that procedure the constitutional minimum for every other municipality, and with regard to different laws.  *See Krimstock*, 306 F.3d at 68-69 ("There is no universal approach to satisfying the requirements of meaningful notice and opportunity to be heard in a situation such as this.").

the forfeiture action advances the public interest in preventing the vehicle from being used for repeated drunk driving."[19]  *Id.* at 144.  Having emphasized the importance of Nassau County's interest in public safety, the Court of Appeals then articulated a standard for such a retention hearing that, like certain language in *Krimstock I*, did not obviously include reference to this interest.  *See id.* at 144-45 ("At such a hearing, the County must establish that probable cause existed for the defendant's initial warrantless arrest, that it is likely to succeed on the merits of the forfeiture action, and that retention is necessary to preserve the vehicle from destruction or sale during the pendency of the proceeding." (footnote omitted)).[20]  Nevertheless, that court has continued to suggest, in cases since *Canavan*, that the government's interest in public safety may justify retention *pendente lite*, *see Harris*, 9 N.Y.3d at 247-48 ("[T]he government's interests in preventing an impounded vehicle's future use as the instrumentality of a crime and preventing against loss, theft, sale, or destruction are

---

[19] *See also id.* at 138, 140 (noting, in the context of rejecting the argument that forfeiture constituted an excessive fine under the Eighth Amendment, that "civil forfeiture of automobiles can be an extremely effective tool in the battle against drunk driving," and that "[g]rievous harm to innocent victims could have been caused by defendant's driving with a blood alcohol level of .15% while speeding and weaving in and out of lanes, had she not been caught and stopped"); *see also id.* ("Given the gravity of the crime of drunk driving, it is difficult to imagine that forfeiture of an automobile for such a crime could ever be excessive.").

[20] This standard also did not specify the allocation of burdens, though it did more strongly imply that the burden of proof rests on the municipality.  It did not explain what would be necessary to discharge that burden.

significant."), and at least one New York Appellate Court has interpreted these decisions to permit evidence of a "heightened risk to the public safety" to justify retention, *Prop. Clerk of Police Dep't of City of N.Y. v. Brown*, 58 A.D.3d 452, 453 (NY App. Div. 1st Dep't 2009) ("[P]etitioners established that continued impoundment of the vehicle was necessary. Brown's criminal history and general lawlessness reveal a heightened risk to the public safety were the subject vehicle released to him." (citation omitted)).[21]

The district court relied on this case law to support its conclusion that the County of Suffolk violated Ferrari's due process rights at his retention hearing. We disagree.

## B.

First, the district court construed *Krimstock I* as meaning that due process "does not permit a municipality to retain vehicles for public safety reasons, when

---

[21] *See also People v. McFarland*, OATH Index No. 1124/04 (February 24, 2004) (in which, at a hearing to determine whether retention was necessary, a neutral magistrate in New York City held as follows: "Regarding the third point [of the *Krimstock/Nassau* test], the Department is entitled to retain the vehicle, pending final outcome of the civil forfeiture action, upon proof that retention is necessary to preserve the vehicle from loss, sale or destruction, *or* that retention is necessary to protect the public from further drunk driving by the respondent.") (emphasis added); *see also id.* ("Proof of an accident while driving drunk and proof of an especially high blood alcohol reading might support the conclusion that the respondent's continued driving would present an unacceptable risk either to the public safety, to the preservation of the vehicle pending outcome of the forfeiture action, or to both. A very high blood alcohol level, an accident while driving drunk, or both together, might show a recklessness behind the wheel that would substantially heighten the risk to both the public and to the preservation of the vehicle. In addition, a very high blood alcohol reading might show a tolerance to alcohol that is indicative of frequent alcohol abuse that would also substantially heighten the relevant risks.").

29

such retention is not 'necessary' to protect the municipality's interests in ultimately obtaining the vehicle's forfeiture." S.A. 10-11. We conclude that this was error.

We disagree with the district court that "a plain reading" of *Krimstock I* requires this surprising result. S.A. 10. We acknowledge that some of the language in *Krimstock I* was, in some sense, ambiguous on this point. The *Krimstock I* court, for instance, observed that "the question [at a retention hearing] is what reason the government has for refusing to exercise some means short of continued retention after seizure to guarantee that property will be available to satisfy a civil forfeiture judgment."[22] *Krimstock*, 306 F.3d at 68. The court also noted that "the Due Process clause requires that claimants be given an early opportunity . . . to ask whether other measures, short of continued impoundment, would satisfy the legitimate interests of the City in protecting the vehicles from sale or destruction *pendente lite*." *Id.*

Nevertheless, *Krimstock I* neither stated nor implied that a municipality may not rely on public safety concerns to justify retention of a seized vehicle

---

[22] Given that evidence suggesting that retention *pendente lite* is necessary to protect the public is usually also probative of whether such retention is necessary to protect the vehicle from destruction, it is quite possible that the panel in *Krimstock I* simply did not think to draw such a distinction in various iterations of its holding. That is especially likely given that the entire discussion of the necessary contours of a retention hearing in *Krimstock I* was, to some extent, ancillary to the question before the court: whether a hearing was required in the first instance.

*pendente lite.* To the contrary, *Krimstock I* expressly stated that multiple DWI offenses "might justify denying release of the vehicle *pendente lite*," an observation that unquestionably depended on recognition of the legitimacy of public safety concerns. *See id.*, n.28. To the extent that *Krimstock I* gave prominence to New York City's interest in safeguarding the value of the seized property, which the opinion described as the "most compelling among the [interests] the City has adduced," *id.* at 65, the opinion did not suggest that this was because the Due Process Clause, for some unexplained reasons, recognizes only governmental interests in property, and denies recognition to governmental interests in public safety. It was rather because the court was not persuaded the New York City forfeiture statute at issue in that case addressed public safety concerns.[23] The Suffolk County forfeiture law at issue here is very different: it focuses, explicitly and exclusively, on repeat DWI or reckless driving offenders.[24]

---

[23] As *Krimstock I* noted, the New York City law at issue provided for the seizure of "all property . . . suspected of having been used as a means of committing crime or employed in aid or furtherance of crime." *Id.* at 44. It made no mention of DWI offenses, nor did it focus on vehicles or other property that can imperil public safety. Notably, while the New York City law was broad enough to apply to property used in crimes in a manner that endangers public safety, it provided equally for the forfeiture of property that posed no danger to public safety. Furthermore, while the City claimed in *Krimstock I* that a statutory objective was "to prevent the offending . . . vehicle . . . from being used . . . in future acts of" dangerous intoxicated driving, the court expressed skepticism as to this concern based, in part, on the fact that the City's Forfeiture Guide counseled against bothering to seize nonowner-operated vehicles of small value. *Id.* at 66-67.

[24] We note that the district court concluded that, as a matter of Suffolk County law, Suffolk County's forfeiture provision authorizes retention *pendente lite* when necessary to protect the public safety, *see* S.A. 12, a proposition that Ferrari conceded to be the case at oral argument.

Thus, *Krimstock I* paid relatively little attention to public safety concerns not because of some inexplicable doubt as to whether such concerns constitute a legitimate governmental interest for the purpose of procedural due process analysis, but rather because of the specific features of New York City's seizure law. When, as here, a court considers a forfeiture provision expressly directed at impaired or reckless operation of vehicles (an activity which is criminalized primarily out of concern for public safety), there is no reason to read *Krimstock I* as the district court did, to prohibit a municipality from retaining vehicles for public safety reasons. *See Booker v. City of Saint Paul*, 762 F.3d 730, 736 (8th Cir. 2014) (citing to language in *Krimstock I* to support the proposition that "[a] repeat DWI offender . . . is demonstrably unlikely to be deterred from driving even after an arrest or the loss of a driver's license," and that, "[a]s such, seizing the vehicle from a four-time offender is a legitimate means of keeping dangerous drivers off the road").

*Krimstock I*, then, does not require that the government justify retention *pendente lite* on the sole basis that its financial interest in the vehicle may be imperiled. Nor have we located other authority to that effect.[25] *See Bennis v.*

---

[25] *Cf. Dixon v. Love*, 431 U.S. 105, 114–15 (1977) (finding it unnecessary for Illinois to provide a pretermination hearing in every case prior to suspending or revoking a driver's license on the basis that

*Michigan*, 516 U.S. 442, 452 (1996) (observing that "forfeiture . . . serves a deterrent purpose," by "prevent[ing] illegal uses 'both by preventing further illicit use of the [property] and by imposing an economic penalty.'" (quoting *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 687 (1974)). Indeed, if the ultimate forfeiture of a car may validly serve the purpose of preventing this forfeited item of property from being further used as an instrumentality of crime, *see id.*, it is not evident why retention *pendente lite* cannot serve, in at least some circumstances, a similar purpose.

In short, the district court erred in concluding that our decision in *Krimstock I* prevents a county or municipality from relying on public safety concerns as the basis for retention *pendente lite*. Suffolk County argues that, in light of this error, we must reverse or remand the grant of summary judgment on the issue of liability. It is indeed plausible that the district court relied on its misunderstanding of *Krimstock I* in granting summary judgment to Ferrari. But we need not resolve the case on this basis alone. Even limiting the County's interest to its property concern, we also conclude that the district court's

the driver had committed certain vehicular offenses, and emphasizing "the important public interest in safety on the roads and highways, and in the prompt removal of a safety hazard"); *id.* at 114-15 (distinguishing the licensing law at issue in that case from one whose only articulated purpose was financial, and observing that "the Illinois statute . . . is designed to keep off the roads those drivers who are unable or unwilling to respect traffic rules and the safety of others").

understanding of what the County must show to make out a prima facia case of necessity went well beyond what the Due Process Clause requires.

## C.

Before analyzing the sufficiency of the process afforded Ferrari at his hearing, it is necessary to clarify precisely what the evidence suggests that process to be. The district court held that the evidence established that the County consistently "shift[ed] the burden" in Ferrari's hearing and others on the issue of necessity, and "failed to introduce evidence of the necessity of retention." S.A. 53-57. It acknowledged, however, that the County indeed introduced evidence, prior to resting its case, that Ferrari had repeatedly committed serious driving violations, had been arrested for an unusually dangerous bout of intoxicated joy-riding, and had shown a documented unwillingness to abide by New York's laws prohibiting seriously impaired or reckless driving. *See* S.A. 16 ("At its strongest, the County argued that Ferrari might damage the vehicle through continued reckless or impaired driving."). The district court further acknowledged, as it had to, that Ferrari himself came forward with no evidence that an alternative measure would suffice to address the County's surely reasonable concern that return of the vehicle could endanger

34

not only the public, but the car. Nevertheless, in the district court's estimation, the County failed to carry its burden because it did not introduce evidence *disproving* the feasibility of alternative measures as part of its prima facia case— evidence, for instance, that might include a "showing that the claimant [was] unable or unwilling to post a bond, and/or lack[ed] other assets that could be easily restrained." S.A. 16 (quoting *Boyle*, 2010 U.S. Dist. LEXIS 114487, at *14-15 n.6).

The County, for its part, largely agrees with the district court's articulation of the facts as to what process it regularly affords. Pointing to the various hearing transcripts in the record in addition to Ferrari's, the County argues that it always opens its case by introducing evidence that a driver has a history of multiple serious driving offenses. Indeed, because Suffolk County's forfeiture law is considerably narrower than that at issue in *Krimstock I*, the County, in order to meet its burden of showing likelihood of success in the forfeiture proceeding, *must* provide such evidence to even reach the issue of necessity.[26]

---

[26] The fact that, in Suffolk, a showing as to likelihood of success in the forfeiture proceeding happens to assist in establishing a prima facia case of the necessity of retention may also help to explain why the word "necessity" is not always used at Suffolk's hearings, or why hearing officers often seem to address the necessity of retention and likelihood of success at the forfeiture hearing together in a single finding. Indeed, though *Krimstock I* distinguished between likelihood of success at the forfeiture hearing and the necessity of retention *pendente lite*, nothing in *Krimstock I* suggests that the evidence necessary to meet the likelihood-of-success prong in Suffolk County (evidence of repeated serious traffic violations) would not, if presented in New York City, also be relevant to establishing necessity—the third prong of

After the County puts forward this evidence, according to Suffolk, a claimant may testify or otherwise put on or proffer evidence *both* as to whether he would suffer a particular hardship absent return of his vehicle *and* as to whether alternative measures might suffice to meet the County's now-demonstrated interest in retention. *See, e.g.*, J.A. 1147 (reflecting that at a hearing on April 23, 2007, after the state had rested, the mother of the driver testified as to her ability to keep the car away from her son (the DWI driver)); J.A. 1290 (at which, in a September 22, 2009 hearing, after the County rested, the secretary of a corporation that owned a vehicle testified as to whether he could plausibly prevent a car from being again used by the president of the corporation, who had driven it drunk and himself been previously convicted of intoxicated driving); J.A. 853-83 (at which, at a July 17, 2008 hearing, after the state rested, the driver testified that he would be willing to have an interlock device on his car if the magistrate permitted him to retain it, and Judge DiNoto, presiding, ultimately released the vehicle to the driver subject to that stipulation); J.A. 1340, 1363 (where, at another hearing, the county attorney argued that "[b]ased on the risk

the *Krimstock I* test. *See Krimstock I*, 306 F.3d at 66 n.28 ("A claimant's proven history of persistent drunkenness or repeated DWI violations . . . might justify a fact-finder in denying release of the vehicle *pendente lite*."); *see also McFarland*, OATH Index No. 1124/04 (noting that a particularly serious *single* drunk driving offense could justify retention *pendente lite* under the *Krimstock II* standard in New York City).

36

to the public at large, [the defendant] should not be driving and returning his vehicle is not appropriate").[27]  The County argues that this was precisely the process it afforded Ferrari at his hearing, and that such a process does not sidestep the County's obligation to show necessity, but instead discharges it.  *See* J.A. 71 (in which the County affirmed, at Ferrari's retention hearing, that "[*Krimstock I*] talks to the County to [demonstrate] necessity of retention," but then argued that, "the County has sustained that burden and there is nothing to refute it by Mr. Ferrari or his attorney in testimony form or evidentiary form to allow this Court to determine that the County should not retain it any further").

We may thus summarize the question as follows: when, at a retention hearing, Suffolk County presents evidence that a driver such as Ferrari has a history of intoxicated or reckless driving (evidence that serves to make out a prima facia case that retention *pendente lite* is necessary to protect the County's financial interest and its interest in protecting the public) may the County, consistent with the Due Process Clause, then shift the burden of going forward

---

[27] Ferrari's counsel, at oral argument, claimed that magistrates in Suffolk County not only permit the County to ignore alternative measures in its prima facia case, but in fact refuse, altogether, to consider less restrictive alternatives.  The evidence in this record does not support such a conclusion, in part because Ferrari did not provide, at his hearing, any evidence that an alternative measure would suffice or even point to any particular measure that he believed would meet the County's interests in retention.  *See also* J.A. 853-83 (where the County released a vehicle to a driver provided he agreed to an interlock device); J.A. 1147 (discussing whether an innocent co-owner could keep a vehicle away from its driver).

onto the owner-driver to point to a specific alternative measure that he is willing and able to sustain that might satisfy the County's interests, and to demonstrate that such alternative measure would be feasible for him? As noted, our decision in *Krimstock I* does not address the allocation of burdens at a retention hearing. And even if *Krimstock I* did, it does not tell us what process would be appropriate in Suffolk County with its inarguably different law.[28] We thus address the question as a matter of first impression. We hold that the County's procedure is not constitutionally deficient.

The question how to allocate burdens in the context of a given procedure is one of procedural due process. *See, e.g., Santosky v. Kramer*, 455 U.S. 745, 747-48 (1982); *see also United States v. One Parcel of Prop. Located at 194 Quaker Farms Rd., Oxford, Conn.*, 85 F.3d 985, 988 (2d Cir. 1996) (upholding a burden-shifting regime wherein the "government must first demonstrate probable cause that . . . property is subject to forfeiture," at which point "[t]he burden then rests upon a

---

[28] *Compare* Suffolk County Code Ch. 270-72 (K) (permitting forfeiture only when a driver was arrested for intoxicated or reckless driving and had at least one prior conviction for the same); *with Krimstock I*, 306 F.3d at 44 (describing New York City's law as permitting forfeiture for a wider array of offenses and on the basis of a first-time offense); *compare* Ch. 270-29 (providing for discretionary relief when justice requires it); *and, e.g.,* J.A. 853-83 (discussing whether a claimant could demonstrate hardship), *with Krimstock I*, 306 F.3d at 61 ("Under the New York City Civil Administrative code, no provision is made for situations in which the seizure and retention of a vehicle would cause particular hardship."); *cf. id.* at 66-67 (observing that New York City's practice of seeking forfeiture only when a vehicle was of particularly high value undermined, to some extent, its claimed interest in retaining vehicles for purposes of public safety).

claimant asserting an innocent owner defense to prove that defense by a preponderance of the evidence" (citations omitted)). We have long held that, outside of the criminal context, there is no presumption that any particular allocation of the burden or burdens is the appropriate one. *See Santosky*, 455 U.S. at 754 (The Court's "decisions concerning constitutional burdens of proof have not turned on any presumption favoring any particular standard."); *One Parcel of Property*, 85 F.3d at 989 ("Generally, Congress may alter the traditional allocation of the burden of proof without infringing upon the litigant's due process rights unless the statute is criminal in nature.").

In assessing whether a particular allocation of burdens comports with the Due Process Clause, we look to the three-factor balancing test articulated in *Mathews v. Eldridge*. *See, e.g.*, *Santosky*, 455 U.S. at 754 ("[T]he Court has engaged in a straight-forward consideration of the factors identified in *Eldridge* to determine whether a particular standard of proof in a particular proceeding satisfies due process."); *Tsirelman v. Daines*, 794 F.3d 310, 314-15 (2d Cir. 2015) (citing *Mathews*, 424 U.S. at 334-35). "The test weighs: (1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used and the value of other safeguards; and (3) the government's interest." *Krimstock III*,

464 F.3d at 253. As the Supreme Court observed in *Mathews*, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334 (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

We first assess the private interest involved. As we explained in *Krimstock I*, and as the New York Court of Appeals further explained in *Canavan*, an owner may have an important interest in retaining the use of a motor vehicle *pendente lite*. *See Krimstock I*, 306 F.3d at 61 ("The particular importance of motor vehicles derives from their use as a mode of transportation and, for some, the means to earn a livelihood."); *Canavan*, 1 N.Y.3d at 143 ("[A]utomobiles are often an essential form of transportation and, in some cases, critical to life necessities, earning a livelihood and obtaining an education."). Further, an individual may also have a financial interest in a vehicle apart from its use by the owner himself—including an interest derived from the rental value of the property. *See Ford Motor Credit Co.*, 503 F.3d at 194 ("[T]he Supreme Court has affirmed the importance of the income stream derived from ownership of property.").

Nevertheless, though the private interest in retaining access to a particular vehicle *pendente lite* is strong, the private interest in affording claimants the

specific procedure demanded by Ferrari—namely, that the County bear the burden of disproving the feasibility of alternative measures that Ferrari has not put in issue—is weak, not strong. First, *Krimstock I*, *Canavan*, and *Harris* were greatly concerned with the plight of innocent owners who might be erroneously deprived of their vehicles for extended periods of time until they could prove, at the ultimate forfeiture hearing, their entitlement to return. *See, e.g.*, *Krimstock I*, 306 F.3d at 55-58 (extensively emphasizing the importance that innocent owners have an opportunity to demonstrate their innocence at a prompt, post-seizure hearing); *Canavan*, 1 N.Y.3d at 142 ("When cars are owned by others or shared among household members, for example, seizure [*pendente lite*] may affect not only a culpable defendant, but also other innocent parties."); *accord Harris*, 9 N.Y.3d at 247. In those cases, a prompt, post-seizure hearing obviously protected the interests of innocent owners; in proving their innocence, they could defeat the government's claim that it was likely to succeed at the ultimate forfeiture hearing. Here, however, a requirement that Suffolk bear the initial burden of proving the infeasibility of alternative measures as part of its prima facia case does not greatly add to the protection already afforded such owners pursuant to Suffolk's existing procedures. Indeed, a requirement that Suffolk County gather

41

evidence material to the availability of alternative measures (such as the financial information the district court suggested could be pertinent) prior to the hearing could have the effect of delaying these hearings, which would arguably be *detrimental* to the interests not only of innocent owners, but title owners more generally. *See* Oral Argument at 28:50-30:13 (in which counsel for the County observes that "a retention hearing must be held in a [short] amount of time after the arrest takes place," and reasonably asks "how can the County do a financial investigation into each person that gets arrested to make a determination whether they were financially capable of putting up a bond [in that limited period of time]?").

Next, the County's practice of shifting the burden of going forward onto a title owner to articulate the case for an alternative measure does not have any material effect on that owner's interests. Prior to hearings in Suffolk County, title owners receive notice as to the questions that will be discussed, including the availability of alternative measures, *see, e.g.*, J.A. 97 (including clear evidence Ferrari himself received such notice). In addition, evidence probative of whether an alternative measure would suffice is generally *uniquely* within the purview of the title owner, who can thus be expected to gather it without difficulty. Placing

42

the burden of going forward as to alternative measures on the title owner, then, does not affect his specific interest in demonstrating that such measures suffice. *Cf. United States v. Bonventre*, 720 F.3d 126, 131-132 (2d Cir. 2013) ("Bonventre argues that any threshold requirement unconstitutionally shifts the burden of proof to the defendant and thereby increases the likelihood of a wrongful criminal conviction because he will be unable to hire his counsel of choice. If the basis for a defendant's motion is not frivolous, however, this low threshold requirement will not operate to bar him from using restrained assets to fund his defense.").[29]

Moreover, lest we ignore the bigger picture, it must be observed that extensive process is already afforded in Suffolk County to protect a title owner's interests. Courts, including ours, have explicated the requirements of a retention hearing in New York for more than a decade. Unlike in *Krimstock I*, which simply held a prompt hearing was required, Suffolk, likely in response to that opinion, indisputably *provides* such hearings. Unlike in *Harris*, Suffolk County *provides* innocent co-owners the opportunity to demonstrate hardship. These

---

[29] Indeed, to ask a title owner to initially frame the argument for an alternative measure is not only reasonable, but it may help *protect* the owner's interest in return of his vehicle: the County cannot be expected, in a short period of time, to both *think of* idiosyncratic but effective alternative measures *and* refute them, even when such measures might indeed suffice to meet its interests. *See* Oral Argument at 17:50-:59 (discussing the potential of a rental arrangement that both parties failed to raise at Ferrari's hearing).

mechanisms serve to ensure that retention is not ordered *pendente lite* unless the County demonstrates, at a prompt post-seizure hearing, probable cause, likelihood of success at the forfeiture, and a prima facia case that retention is justified. In this context, Ferrari's interest in requiring Suffolk County to *disprove* the feasibility of alternative measures before he has come forward with any showing at all is not strong.

We conclude that the likelihood of error prong also favors the City. We note, initially, that *Krimstock I* held that this factor, even in the *absence* of a prompt hearing, "weigh[ed] in favor of the City." *Krimstock I*, 306 F.3d at 64; *see also id.* at 62 ("We acknowledge that the risk of erroneous seizure and retention of a vehicle is reduced in the case of a DWI owner-arrestee, because a trained police officer's assessment of the owner-driver's state of intoxication can typically be expected to be accurate."). This factor weighs even *more strongly* for the County here. The district court faulted the County for failing to produce evidence showing "that [Ferrari was] unable or unwilling to post a bond, and/or lacks other assets that could be easily restrained." S.A. 16 (quoting *Boyle*, 2010 U.S. Dist. LEXIS 114487, at *14-15 n.6). But evidence of a driver-owner's ability to post a bond or collateral is evidence plainly within the unique purview of the

driver-owner himself.   And the same is true for extensive other evidence probative of the alternative measures inquiry, which will frequently require analysis of the unique circumstances and home life of a given driver.[30]  *See, e.g.*, J.A. 1147 (discussing whether the mother of the driver is able to keep the car from her son).  We have long held that, in a situation where evidence of a particular matter is uniquely in the possession of a given party, due process permits shifting the burden of production, where appropriate, to that party.  *See One Parcel of Property*, 85 F.3d at 990 ("[T]hose who assert the innocent owner defense have unique access to evidence regarding such claims. . . .  Burden-shifting where one party has superior access to evidence on a particular issue is a common feature of our law.").  Yet Ferrari would require that, if the County does not produce sufficient evidence as to the infeasibility of alternative measures—if it does not prove a negative as to a matter concerning which the title owner has superior access to the relevant information—the vehicle must be returned. Ferrari's proposed process would probably increase the likelihood that a car is returned to an owner when such return poses a threat to the County's financial interest or to the public safety.  Given the driver's superior access to the relevant

---

[30] In this way, evidence of alternative measures resembles evidence of innocent ownership or of hardship.  *See Harris*, 9 N.Y. 3d at 247 (observing that "[i]nnocent co-owners possess highly relevant evidence—unknown to the City—as to th[e] inquiry [into whether justice requires return of the vehicle]").

45

evidence and the process already afforded him by Suffolk County's law, there is simply no justification for *requiring* the process Ferrari demands in the name of reducing the likelihood of wrongful deprivation of his property.

Finally, we turn to the County's interest here. As *Krimstock I* itself acknowledged, there are at least two clear public interests in retaining a vehicle *pendente lite*: a financial interest in the vehicle, and an interest in protecting the public from use of the vehicle "as an instrumentality in future acts of driving while intoxicated." *Krimstock I*, 306 F.3d at 64-66. Here, the latter interest is particularly strong: as already noted, Suffolk County's law was specifically passed to protect the public from repeat "offenders of New York's drunk driving laws." J.A. 140; *see also Dixon*, 431 U.S. at 114-15 (distinguishing Illinois' licensure law, which was "designed to keep off the roads those drivers who are unable or unwilling to respect traffic rules and the safety of others," from a Georgia statute whose "only purpose" was "to obtain security from which to pay any judgments against the licensee resulting from the accident" (quoting *Bell v. Burson*, 402 U.S. 535, 540 (1971)). And as noted above, adoption of Ferrari's and the district court's preferred process would surely lead to the return of vehicles *pendente lite* even where retention is indeed necessary to protect the County's interests merely

because the County failed to meet an unrealistically demanding burden. As the Supreme Court has said, standards of proof (and presumably allocations of such standards) "reflect[] not only the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants." *Santosky*, 455 U.S. at 754-55. We cannot hold, as Ferrari effectively asks us to, that any marginal benefit afforded drivers like him by the added layer of process he seeks is so paramount that the Constitution of the United States *requires* Suffolk County to adopt a process at retention hearings that could put its residents at risk.

In short, weighing the private interest, the risk of error, and the County's interest, we conclude that it does not violate the Due Process Clause for Suffolk County, after establishing a prima facia case that retention may be necessary to protect the County's interests in the financial value of the vehicle or in protecting the public from repeated unsafe driving, to shift the burden of going forward to the title owner to point to an alternative measure that he is willing and able to sustain that might satisfy the County's interests and to demonstrate, at least as an initial matter, that such alternative measure would be feasible for him. As already noted, Ferrari produced no evidence as to alternative measures at his

hearing, and argues here that it was the County's burden to prove the infeasibility of alternative measures as part of its prima facie case. Our conclusion that this is incorrect—that it was constitutionally permissible at the retention hearing to shift the burden of going forward to Ferrari after Suffolk County presented evidence as to his history of intoxicated driving—is sufficient to resolve this case.[31]

## CONCLUSION

We conclude that the district court erred in granting summary judgment to Ferrari on his due process claim and also in denying summary judgment to Suffolk County. Accordingly, the order of the district court granting summary judgment to Ferrari is **REVERSED** and the case **REMANDED** with instructions to enter judgment in favor of the County.

---

[31] Accordingly, we need not and do not address the ultimate burden of proof on alternative measures, but only the burden of production—*i.e.*, going forward.