# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 16, 2020

Lyle W. Cayce
Clerk

No. 18-50977

Gerardo Serrano,

*Plaintiff—Appellant*,

*versus*

Customs and Border Patrol, U.S. Customs and Border Protection; United States of America; John Doe 1-X; Juan Espinoza; Kevin McAleenan,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 2:17-CV-48

Before Clement, Higginson, and Engelhardt, *Circuit Judges*.

Per Curiam:

Gerardo Serrano filed suit against the United States Customs and Border Protection (CBP) and related parties, alleging constitutional violations after his truck and its contents were seized at the United States-Mexico border. Serrano sought the return of his property pursuant to Federal Rule of Criminal Procedure 41(g), as well as damages under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), alleging violations of his Fourth and Fifth Amendment rights. Additionally, Serrano asserted a purported

class-wide due process claim against the United States, CBP, and the CBP Commissioner, seeking declaratory and injunctive relief, directing CBP to provide prompt post-seizure hearings when seizing vehicles for civil forfeiture. The district court granted defendants' motions to dismiss and denied as moot Serrano's motion to certify the class.

On appeal, Serrano contends that the district court erred in dismissing his complaint and should be reversed for three reasons: Serrano argues (1) he properly stated a class claim that defendants must provide prompt, post-seizure hearings when they take property for civil forfeiture based on *Mathews v. Eldridge*, 424 U.S. 319 (1976); (2) he properly stated a class claim that it is unconstitutional to condition a forfeiture hearing on the property owner posting a bond; and (3) he claims he has a cause of action for damages under *Bivens* because his claims do not arise in a new context, nor are there factors counselling against allowing his damages claims to proceed. For the reasons stated herein, we AFFIRM the judgment of the district court.[1]

## I.

On September 21, 2015, Gerardo Serrano, a U.S. citizen and resident of Tyner, Kentucky, was driving his 2014 Ford F-250 pickup truck to Mexico to meet with his cousin when he was stopped at the Eagle Pass, Texas, Port

---

[1] Appellees assert that Serrano's class claims were mooted by the return of his property. We disagree. In *Zeidman v. J. Ray McDermott & Co.*, this court extended the concept of relation back in holding that "a suit brought as a class action should not be dismissed for mootness upon tender to the named plaintiffs of their personal claims, at least when . . . there is pending before the district court a timely filed and diligently pursued motion for class certification." 651 F.2d 1030, 1051 (5th Cir. 1981); *see also Fontenot v. McCraw*, 777 F.3d 741, 750 (5th Cir. 2015) (stating that *Genesis Healthcare Corp. v. Symcyzk*, 569 U.S. 66 (2013), "does not foreclose the broader *Zeidman* approach to the relation back doctrine").

of Entry.[2] While still in the United States, Serrano began to take pictures of the border crossing with his cell phone.

Two CBP agents objected to Serrano photographing the border facility and, after stopping his truck, physically removed him from it, took possession of his phone, and repeatedly demanded the password to unlock his phone. Invoking his constitutional rights, Serrano refused to provide the password to his phone. The agents searched his vehicle, finding a .380 caliber magazine and five .380 caliber bullets in the truck's center console.[3]

The agents handcuffed Serrano and detained him for several hours, consistently attempting to obtain the password for his phone without success. Serrano explained that he was not aware that the bullets and magazine were in the truck. As he had not yet crossed into Mexico, Serrano offered to turn around and leave the border facility or leave the magazine and low-caliber bullets at the border facility. After being detained for about three hours, Serrano was released, but CBP agents seized his vehicle and its contents, including the magazine and the bullets. Serrano left the detention facility on foot.

On October 1, 2015, CBP mailed Serrano a notice of seizure, informing him that the truck, magazine, and bullets were seized and subject to forfeiture because there was probable cause to believe that Serrano had attempted to export "munitions of war" from the United States.[4] The notice advised

---

[2] Because Serrano's claims were dismissed on the pleadings, the alleged underlying facts are taken as true.

[3] Serrano has a valid concealed carry permit issued by his home state of Kentucky.

[4] The notice stated that the "property was seized and is subject to forfeiture under the provisions of [19 U.S.C. § 1595a(d), 22 U.S.C. § 401, 22 U.S.C. § 2778, and 22 C.F.R. Part 127.1.]" According to 19 U.S.C. § 1595a(d), merchandise attempted to be exported from the United States contrary to law, and property used to facilitate the exporting, shall be seized and forfeited to the United States. The other provisions cited in the notice are as follows: 22 U.S.C. § 401 (providing for seizure and forfeiture of illegally exported war materials and vehicles used to attempt to export such articles); 22 U.S.C. § 2778 (control

Serrano of the options that were available to him concerning the seizure: (1) file a remission petition; (2) submit an "offer in compromise" and include a check of the proposed settlement amount along with the offer; (3) abandon any interest in the property; (4) request court action and have his case referred to the U.S. Attorney for institution of judicial forfeiture proceedings; (5) do nothing; or (6) offer to substitute release of the seized property on payment.

If Serrano chose to have his case referred to the U.S. Attorney (option 4), the notice stated that he must submit to CBP at the address provided a claim and "cost bond in the penal sum of $5,000 or 10 percent of the value of the claimed property, whichever is less, but in no case shall the amount of the bond be less than $250.00."[5] Under this "court action" option, the notice further advised:

> If you file the claim and bond, the case will be referred promptly to the appropriate U.S. Attorney for the institution of judicial proceedings in Federal court to forfeit the seized property in accordance with 19 U.S.C. § 1608 and 19 C.F.R. § 162.47. You may then file a petition for relief with the Department of Justice pursuant to Title 28, Code of Federal Register, Part 9 (28 C.F.R. Pt. 9). Failure to submit a bond with the claim will render the request for judicial proceedings incomplete, and therefore, defective. This means that the case will NOT be referred to the appropriate U.S. Attorney.

---

of arms exports and imports); and 22 C.F.R. § 127.1 (violations for illegal exports from the United States).

[5] As explained in the notice, if the claimant could not afford to post the bond, he should contact the Fines, Penalties & Forfeitures Officer so that CBP can make a determination of claimant's financial ability to pay the bond. "If a determination of inability to pay is made, the cost of the bond may be waived in its entirety." Serrano does not allege in his complaint either that he applied for the waiver of the bond or that he was unreasonably denied a waiver.

On October 22, 2015, Serrano responded to the notice by letter, demanding the immediate return of his truck or a hearing in court. Along with the letter, he sent a check for $3,804.99 to satisfy the bond requirement. According to Serrano's bank records, CBP promptly deposited the check on or about October 30, 2015.

On four separate occasions, Serrano called defendant Juan Espinoza, a paralegal at CBP and the primary point of contact identified in the notice of seizure, to inquire about the status of his case. During one of these calls, Espinoza told Serrano that his case was taking so long because he had requested to see a judge. Espinoza also informed Serrano that he would have to wait for his case to be referred to an available Assistant United States Attorney.

On December 19, 2016, Serrano submitted a Freedom of Information Act request to CBP asking for information about the seizure and forfeiture of his truck. As of the date of the filing of the complaint, CBP had not responded. For 23 months, defendants failed to institute forfeiture proceedings and Serrano was deprived of his property without a hearing to challenge the seizure or the continued retention of his vehicle.[6]

On September 6, 2017, Serrano filed a complaint for return of property, compensatory damages, and class-wide injunctive and declaratory relief, naming as defendants the U.S. Customs and Border Protection (CBP), the United States, Kevin McAleenan[7] in his official capacity as the Acting Commissioner of CBP, Juan Espinoza in his individual capacity, and John

---

[6] Serrano alleges that the truck was held at a CBP seizure lot. While seized, he continued to make monthly loan payments of $672.97, as well as insurance and registration payments for a truck that he could not drive. Serrano also spent thousands of dollars on rental cars.

[7] On July 7, 2019, Mark A. Morgan was appointed to serve as Acting Commissioner of U.S. Customs and Border Protection. Under Federal Rule of Appellate Procedure 43(c), Acting Commissioner Morgan is automatically substituted as a party.

Doe 1-X (unidentified responsible CBP agents). Serrano sought the return of his "truck and all its contents, his magazine, five bullets, and the $3,804.99 that he posted as bond" under Federal Rule of Criminal Procedure 41(g), alleging that the seizure and continued retention of his property violated his Fourth and Fifth Amendment rights (Count I). Serrano also asserted an individual *Bivens* claim for damages against Espinoza and other unknown and unserved agents acting in their individual capacities for the violation of his Fourth (Count II) and Fifth (Count III) Amendment rights. Additionally, Serrano sought injunctive and declaratory relief on behalf of a putative class against CBP's policy or practice of holding seized vehicles without providing a prompt, post-seizure forfeiture hearing, in violation of the class's due-process rights (Count IV). Serrano simultaneously moved to certify a class consisting of "all U.S. Citizens whose vehicles are or will be seized by CBP for civil forfeiture and held without a post-seizure hearing."

The following month, on October 19, 2017, CBP returned Serrano's truck. However, the remainder of Serrano's property was not returned for several more months: Serrano filed a notice on February 26, 2018, notifying the court that his $3,804.99 in bond money had been returned and another notice on May 29, 2018, that his seized bullets and magazine were returned "without apology or explanation."[8]

On December 13, 2017, defendants United States, CBP, and the CBP Commissioner (Class Defendants) moved to dismiss Serrano's individual and class claims as moot and for failure to state a claim, arguing that the claims are moot because Serrano's property was returned, and, in any event, due process does not require a post-seizure hearing. Class Defendants also filed a response in opposition to the motion to certify. The same day, Espinoza filed a Rule 12(b)(6) motion to dismiss Serrano's *Bivens* claim,

---

[8] Ultimately, Serrano was never charged with a crime and his property was returned prior to forfeiture proceedings.

seeking dismissal because Serrano failed to allege a viable *Bivens* claim under existing law and contending that no *Bivens* claim is available in this new context.[9] *See* FED. R. CIV. P. 12(b)(6). Alternatively, Espinoza argued that he is entitled to qualified immunity because he did not violate any clearly established constitutional right.

Serrano conceded that the return of his property mooted his individual claim for return of property (Count I), but otherwise opposed both motions to dismiss.

On July 23, 2018, the magistrate judge issued a report and recommendation. The magistrate judge concluded that Serrano's remaining claims were not moot, but recommended dismissal because Serrano failed to state a claim upon which relief could be granted. Serrano filed written objections to the report and recommendation.

On September 28, 2018, after de novo review of the report's factual findings and legal conclusions, the district court overruled Serrano's objections and adopted the magistrate judge's recommendations based on reasons it provided in its order. The district court dismissed Serrano's class-wide and individual claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted. In dismissing Serrano's class claims, the district court reasoned: "Because this Court finds a weighing of the *Mathews* factors indicates that due process does not require a prompt post-seizure, pre-forfeiture hearing, the Plaintiff has failed to state a claim for which relief can be granted."

Additionally, the district court dismissed Serrano's *Bivens* claims. The district court concluded that both of Serrano's claims (under the Fourth

---

[9] The motion to dismiss was filed on behalf of defendant Juan Espinoza, but noted: "The John Doe defendants have not been identified by Plaintiff, nor have they been served. Because this motion raises threshold defenses relating to Plaintiff's ability to state a *Bivens* claim against Defendant Juan Espinoza, it is likely that a ruling for Espinoza would also entitle the unidentified John Doe Defendants to a judgment in their favor."

and Fifth Amendments) arise in a "new context" that is significantly different from any of the three *Bivens* claims the Supreme Court has recognized in the past. The district court further concluded that special factors counseled against expanding the *Bivens* remedy in this case. The district court explained that the remedial forfeiture scheme under the customs laws is analogous to the statutory schemes that the Supreme Court found preclusive of a judicially created *Bivens* remedy in *Bush v. Lucas*, 462 U.S. 367 (1983), and *Schweiker v. Chilicky*, 487 U.S. 412 (1988).

Serrano timely appealed. On appeal, Serrano contends that the district court erred in dismissing his complaint and should be reversed for three reasons: (1) he "properly stated a class claim that Defendants must provide prompt, post-seizure hearings when they take property for civil forfeiture" based on *Mathews*, 424 U.S. at 319; (2) he "properly stated a class claim that it is unconstitutional to condition a forfeiture hearing on the property owner posting a bond;" and (3) he has a cause of action for damages under *Bivens*, 403 U.S. at 388, because his claims do not arise in a new context, nor are there factors counselling against allowing his damages claims to proceed.

## II.

We review a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) de novo, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

While the factual allegations need not be detailed, they must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S.

at 555. "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## III.

### *Due Process Claims*

The main focus of Serrano's due process challenge is to the Government's continued retention of seized property without a prompt judicial hearing to determine whether the government can retain possession of the seized property pending judicial forfeiture proceedings. Because he claims the district court erred in concluding that CBP's practices do not violate due process as a matter of law, Serrano maintains that the district court erred both in dismissing Count IV for failure to state a claim and denying as moot his motion for class certification. Contrary to the district court's finding, Serrano argues that due process requires a prompt, post-seizure hearing as evidenced by a "long line of authority requiring prompt hearings to contest even temporary deprivations of property" and a proper weighing of the *Mathews v. Eldridge* due process factors.

The Due Process Clause of the Fifth Amendment guarantees that "[n]o person shall be. . .deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. "The essence of due process is the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it." *Mathews*, 424 U.S. at 348–49 (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171–72 (Frankfurter, J., concurring)). "[D]ue process is flexible and calls [only] for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). As the Supreme Court explained in *Mathews*, in identifying the "specific dictates of due process," courts must consider three factors: (1) "the private interest that will be affected by the

official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[10] 424 U.S. at 335.

The first factor we consider in the *Mathews* analysis is "the private interest that will be affected by the official action." *Id.* "The deprivation of real or personal property involves substantial due process interests." *Krimstock v. Kelly*, 306 F.3d 40, 61 (2d Cir. 2002) (Sotomayor, J.) (citing *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53–54 (1993)).[11] An individual has an important interest in the possession of his or her motor vehicle, particularly because of its "use as a mode of transportation, and, for some, the means to earn a livelihood." *Id.* Because the seizure of a vehicle implicates an important private interest, the main points of contention are with respect to the balancing of the second and third *Mathews* factors.

Under the second *Mathews* factor, we consider "the risk of erroneous deprivation of such interest through the procedures used, and the probable

---

[10] As the district court noted, Serrano's asserted class claims argue that due process requires a prompt, post-seizure hearing in a court of law to determine whether the Government can retain possession of the seized property pending judicial forfeiture proceedings. Importantly, Serrano does not challenge the validity of the initial seizure nor does he allege that the administrative delays in referring his case to the United States Attorney in this instance violate due process. *See United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 564 (1983) (applying the speedy trial balancing test identified in *Barker v. Wingo*, 407 U.S. 514 (1972), to determine whether the Government's delay in filing a forfeiture action was reasonable). Accordingly, both parties' arguments focus on the application of the *Mathews* factors.

[11] *Good* involved the seizure of real property. Property that is capable of being moved and concealed involves different concerns from the forfeiture of real property. *See* 510 U.S. at 52–53.

value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Serrano disagrees with the district court's finding that the federal scheme at issue affords multiple alternative remedial processes, lowering the risk of erroneous deprivation. To the contrary, Serrano asserts that CBP's forfeiture procedures create a high risk of erroneous deprivation because none of the processes available afford property owners the protection of a neutral decision maker, as required by due process.

The risk is minimal under the second *Mathews* factor when we consider the remedial procedures available that permit a claimant to contest the deprivation of his vehicle. *Cf. United States v. One 1971 BMW 4-Door Sedan*, 652 F.2d 817, 820 (9th Cir. 1981) ("The pervasive statutory scheme. . .evidences substantial concern on the part of Congress with respect to what process is due owners of vehicles seized under the narcotics laws and regulations. Great weight must be given to its judgment." (citing *Mathews*, 424 U.S. at 349)). Under the current customs laws, if the value of the seized property is below $500,000, CBP sends written notice to each party that has an interest in the claim or seized property.[12] 19 U.S.C. § 1607; 19 C.F.R. § 162.31. The notice informs the claimant of a number of available options to address the seized property, which include filing a petition for remission; filing an offer in compromise; abandoning the property; or requesting the matter be referred to the U.S. Attorney for institution of judicial forfeiture proceedings.

A petition for remission offers an expedited administrative procedure to contest the forfeiture. *See United States v. Von Neumann*, 474 U.S. 242, 250 (1986) ("Remission proceedings supply both the Government and the claimant a way to resolve a dispute informally rather than in judicial forfeiture proceedings."). "The purpose of the remission statutes is to grant the

---

[12] The notice identifies, among other things, the provisions of law alleged to have been violated, a description of the specific acts or omission alleged, and additional details about the seized property.

executive the power to ameliorate the potential harshness of forfeitures." *In re Sixty Seven Thousand Four Hundred Seventy Dollars*, 901 F.2d 1540, 1543 (11th Cir. 1990).

In the petition for remission, the claimant has an opportunity to explain why he believes he warrants relief from forfeiture. Notably, testimony may be taken in connection with a remission petition. 19 U.S.C. § 1618. Serrano's notice of seizure states that if he is dissatisfied with the petition decision or at any point prior to the forfeiture of the property, he may request a referral to the U.S. Attorney for judicial action by filing a claim and cost bond. In the past, the statutory administrative remission procedure was a popular and effective tool for obtaining the return of property. *See Von Neumann*, 474 U.S. at 249 n.8 (In "90% of all seizures, the claimant files a petition for remission or mitigation," and at least partial relief was granted in an estimated 75% of the petitions).

Further, the fourth option, which Serrano selected, allows for an independent evaluation and determination by the U.S. Attorney regarding forfeiture proceedings. If the claimant elects this proceeding and properly files a claim and bond,[13] the notice states that the "case will be referred *promptly* to the appropriate U.S. Attorney for the institution of forfeiture proceedings."[14] *See* 19 U.S.C. § 1603(b) (requiring a "customs officer to report promptly [a] seizure [made for violation of customs laws] . . . to the United States attorney for the district  in which such violation has occurred, or in which such seizure was made"); *see also* 19 U.S.C. § 1604 ("It shall be the duty of the Attorney General of the United States immediately to inquire

---

[13] Recall that the statute provides for a potential waiver of the bond in its entirety.

[14] "Since October of 1978 the constitutional requirement of promptness has been incorporated into the Customs statutes." *United States v. One 1976 Mercedes 450 SLC*, 667 F.2d 1171, 1175 n.3 (5th Cir. Unit B 1982). The parties agree that the processing timeline provisions of the Civil Asset Forfeiture Reform Act of 2000 (CAFRA) are not applicable to the challenged forfeiture proceeding. *See* 18 U.S.C. § 983(i)(2)(A).]

into the facts of cases reported to him by customs officers and the laws applicable thereto, and if it appears probable . . . to cause the proper proceedings to be commenced and prosecuted, without delay, for the recovery of such fine, penalty, or forfeiture."). Thus, referral may result in return of the property and any bond without further delay.

Indeed, Serrano concedes that the forfeiture proceeding itself would provide the post-seizure hearing required by due process if it were held promptly. An unreasonably long retention without instituting a forfeiture proceeding can constitute a denial of due process. *See, e.g., United States v. $23,407.69 in U.S. Currency*, 715 F.2d 162, 165–66 (5th Cir. 1983). In the event there is a prolonged delay in initiating forfeiture proceedings, a claimant can challenge the reasonableness of the delay under *Barker. See United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 564 (1983) (applying the four-factor balancing test of *Barker*, to determine whether the Government's delay in filing a forfeiture action was reasonable); *see also Shults v. Texas*, 762 F.2d 449, 453 (5th Cir. 1985) (considering *$8,850* the "seminal case" addressing "whether a delay in a post-seizure hearing offended the Fifth Amendment right against deprivation of property without due process of law").

Importantly, as is evidenced in this case, the property owner may file a motion under Federal Rule of Criminal Procedure 41(g) for the return of seized property.[15] *See United States v. Sims*, 376 F.3d 705, 708 (7th Cir. 2004);

---

[15] Federal Rule of Criminal Procedure 41(g), formerly Rule 41(e), provides:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable

*cf. Krimstock*, 306 F.3d at 52 n.12 (distinguishing forfeiture under the customs law and noting that under the customs law applicable in *Von Neumann*, the claimant could file a motion under Federal Rule of Criminal Procedure 41(g) "for return of the seized vehicle if he or she 'believe[d] the initial seizure was improper'" (quoting *Von Neumann,* 474 U.S. at 244 n.3) (brackets in *Krimstock*)). Although a Rule 41(g) motion is generally available in the context of an ongoing criminal proceeding, the court can properly construe it as a civil complaint under the court's general equity jurisdiction. *See, e.g., Bailey v. United States*, 508 F.3d 736, 738 (5th Cir. 2007); *United States v. Robinson*, 434 F.3d 357, 361 (5th Cir. 2005); *accord United States v. Craig*, 694 F.3d 509, 512 (3d Cir. 2012); *United States v. Search of Music City Mktg., Inc.*, 212 F.3d 920, 923 (6th Cir. 2000); *Floyd v. United States*, 860 F.2d 999, 1002–03, 1006–07 (10th Cir. 1988). Thus, Rule 41(g) provides an additional avenue to challenge the seizure before a neutral decision maker and is "an action frequently taken to force the government agency to act expeditiously." *Muhammed v. Drug Enf't Agency, Asset Forfeiture Unit*, 92 F.3d 648, 651–52 (8th Cir. 1996). Serrano argues that Rule 41(g) is insufficient to protect the interest of his purported class because it only allows the movant to challenge the legality of the underlying seizure, not the interim retention of the property pending judicial proceedings. But the availability of a prompt merits determination minimizes any need for an interim hearing.

In assessing the risk of erroneous deprivation, we consider the agency's pecuniary interest in the outcome of the forfeiture proceedings. As observed by the Supreme Court, greater procedural safeguards are "of particular importance . . . where the Government has a direct pecuniary interest in the outcome of the proceeding." *Good*, 510 U.S. at 55–56. Serrano alleges that CBP retains forfeited property or its proceeds to fund its law-enforcement operations, giving the agency and its officers a direct financial

_____

conditions to protect access to the property and its use in later proceedings.

stake in seizing and forfeiting property. However, taking these allegations as true, the option to elect judicial forfeiture proceedings and/or file a Rule 41(g) motion in district court are existing safeguards to counter CBP's alleged interest in forfeiture proceeds.

Given the remedial processes available, the second *Mathews* factor weighs in favor of the Government.

Finally, the third factor under *Mathews* requires a consideration of "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. Serrano disagrees with the weight the district court attributed to the third factor, based on its conclusion that the Government has an important interest in enforcing customs laws and the potential administrative burden that providing prompt hearings would place on the Government.

The third factor weighs in favor of the Government. We cannot ignore the context of the underlying seizure. The Government's interest in preventing the unlawful exportation of munitions, drugs, and other contraband is significant. *See, e.g., Hernandez v. Mesa*, 140 S. Ct. 735, 746 (2020) ("One of the ways in which the Executive protects this country is by attempting to control the movement of people and goods across the border."); *Lee v. Thornton*, 538 F.2d 27, 31 (2d Cir. 1976) ("There is an extremely important government interest in policing the passage of persons and articles into the country across its borders."). Further, Serrano's property was subject to forfeiture because the agents believed that the truck was used in an attempt to illegally export munitions from the United States, in violation of federal law.[16] The Government's retention protects its interest

---

[16] There is no dispute that Serrano's vehicle contained the magazine and bullets when he attempted to exit the United States and enter Mexico. Nor does Serrano dispute that the seizure was pursuant to a statutory grant of authority under the customs laws.

in the seized vehicle. Additionally, a significant administrative burden would be placed on the Government if it was required to provide prompt post-seizure hearings in every vehicle seizure.

Given the broad allegations in the complaint and our balancing of the *Mathews* factors, we conclude that Serrano has failed to state a claim for a procedural due process violation. As identified in the CBP's seizure notice, a claimant is notified of the seizure and provided options for challenging the CBP's action, both administratively and judicially. Serrano has not sufficiently alleged the constitutional inadequacy of the existing procedures, nor has he shown that the available processes are unavailable or patently inadequate.

Moreover, our conclusion that the additional process Serrano seeks is not constitutionally required in this context is consistent with *Von Neumann.* There, the Supreme Court recognized that "implicit" in its "discussion of timeliness in *$8,850* was the view that the forfeiture proceeding, *without more*, provides the postseizure hearing required by due process to protect [claimant's] property interest in the car." 474 U.S. at 249 (emphasis added). The parties dispute the relevance of *Von Neumann. Compare* Red Br. 22 (*Von Neumann* forecloses plaintiff's argument) *with* Reply Br. 13 ("[A]s the district court correctly recognized, *Von Neumann* does not govern [Serrano's] claim."). We agree that *Von Neumann* is not dispositive of Serrano's due process challenge; however, the Court's reasoning is pertinent to our due process analysis.

*Von Neumann* specifically notes that a claimant's "right to a forfeiture proceeding meeting the *Barker*[17] test satisfies any due process right with

---

[17] The Supreme Court in *$8,850* and *Von Neumann* applied the *Barker* test to a due process challenge to the Government's delay in instituting a civil forfeiture proceeding. *Barker v. Wingo*, 407 U.S. 514 (1972), which addressed a defendant's right to a speedy trial, propounded a four-part test to be used as a guide "in balancing the interests of the claimant and the Government to assess whether the basic due process requirement of fairness has

respect to the car and the money." *Von Neumann*, 474 U.S. at 251; *see also Gonzales v. Rivkind*, 858 F.2d 657, 661–62 (11th Cir. 1988); *LKQ Corp. v. U.S. Dep't of Homeland Sec.*, 369 F. Supp. 3d 577, 589–90 (D. Del. 2019). And neither the Supreme Court nor the Fifth Circuit has held that the Due Process Clause requires an additional post-seizure, pre-forfeiture judicial hearing.

Moreover, the cases Serrano cites do not dictate a different result under *Mathews*. Serrano primarily relies on the Second Circuit's decision in *Krimstock*, 306 F.3d at 40, to support his position that a prompt, post-seizure hearing is constitutionally required while awaiting the forfeiture hearing.[18] In *Krimstock*, plaintiffs challenged the constitutionality of the seizure and retention of motor vehicles under the city's Civil Administrative Code, a forfeiture statute that permitted, on the basis of a first offense, seizure of "a motor vehicle following an arrest for the state-law charge of driving while intoxicated. . .or any other crime for which the vehicle could serve as an instrumentality." 306 F.3d at 44. Having identified special due process concerns and applying the three *Mathews* factors, the court in *Krimstock* concluded that the New York administrative code provisions at issue did not pass constitutional muster. *Id.* at 67.

*Krimstock* does not constrain our balancing of the *Mathews* factors in this case. Of particular importance, *Krimstock* is limited to the specific New York City statute at issue, which is materially distinguishable from the

---

been satisfied in a particular case." *$8,850*, 461 U.S. at 565. Courts have expressed confusion about whether to analyze a due process challenge to a forfeiture procedure under *Barker* or *Mathews*. *See, e.g., Ford Motor Credit Co. v. NYC Police Dep't.*, 503 F.3d 186, 194 (2d Cir. 2007). We agree with the parties that *Mathews* is more applicable here because the harm alleged is the lack of an interim hearing rather than delay preceding an ultimate hearing on the merits.

[18] Unlike *$8,850* and *Von Neumann*, *Krimstock* analyzed a forfeiture due process challenge under the *Mathews* factors.

forfeiture scheme Serrano challenges.[19] "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey*, 408 U.S. at 481.

Accordingly, Serrano's complaint fails to state a claim upon which relief can be granted.

### Serrano also alleges that it is unconstitutional to condition a forfeiture hearing on the property owner posting a bond

As a threshold matter, Serrano failed to object to the magistrate judge's findings with regard to his class claims challenging the bond requirement to institute judicial forfeiture proceedings. Reviewing for clear error, the district court found none and adopted the magistrate judge's report in full. [*Id.*] Because Serrano failed to object, our review is limited to plain

---

[19] Applying the three *Mathews* factors, the court in *Krimstock* concluded that the New York administrative code provisions at issue did not pass constitutional muster because they failed to include a provision for a prompt post-seizure, prejudgment hearing before a neutral judicial or administrative officer to determine whether the city was likely to succeed on the merits of the forfeiture action and whether means short of retention of the vehicle could satisfy the city's need to preserve it from destruction or sale during the pendency of proceedings. 306 F.3d 40 (2d Cir. 2002). In *Ferrari v. County of Suffolk*, a man had his vehicle seized in connection with his arrest for driving while intoxicated, pursuant to the county's DWI seizure statute. 845 F.3d 46, 49, 59 n.18 (2d Cir. 2016). Our sister circuit held that a district court erred in concluding that *Krimstock* prevented a county or municipality from relying on public safety concerns as the basis for retention *pendente lite*, and that the Due Process Clause of the Fourteenth Amendment permitted the county, after making out a prima facie case that retention was necessary to protect its interests, to shift the burden of going forward onto the title owner to identify an alternative measure that satisfied the municipality's interests. *Id.* The New York forfeiture statutes in *Ferrari* and *Krimstock* are materially distinguishable from the forfeiture scheme in the present case. The statute in *Ferrari* permitted forfeiture only when the vehicle was an instrumentality of a specifically enumerated, serious crime, and the driver involved had at least one prior conviction for such a crime. *Id.* at 49. The statute was "aimed specifically at repeat offenders of New York's drunk driving laws," and afforded owners a prompt, post-seizure hearing to determine if the county may retain the vehicle (unavailable with the statute at issue in *Krimstock*). *Id.* at 50.

error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

The district court did not plainly err in holding that Serrano failed to state a claim that the bond requirement violates due process. *See Faldraga v. Carnes*, 674 F. Supp. 845, 850 (S.D. Fla. 1987); *see also Brown v. Dist. of Columbia*, 115 F. Supp. 3d 56, 72 (D.D.C. 2015). Claimants who elect to judicially challenge the forfeiture are generally required to post a cost bond in the penal sum of $5,000 or 10 percent of the value of the claimed property, whichever is less, but in no case shall the amount of the bond be less than $250. 19 U.S.C. § 1608.

The bond serves to "deter those claimants with frivolous claims" and "to cover the costs and expenses of the proceedings." *Arango v. U.S. Dep't of the Treasury*, 115 F.3d 922, 925 (11th Cir. 1997) (quotations omitted). "If the outcome of the judicial proceeding is in the claimant's favor, the bond is returned." *Id.* (citation omitted). Additionally, to ensure that the bond requirement does not deny indigent claimants an opportunity to contest the forfeiture in court, CBP provides by regulation that the bond requirement shall be waived "upon satisfactory proof of financial inability to post the bond." 19 C.F.R. § 162.47(e). The notice of seizure explicitly advises the claimant that if he cannot afford to post the bond, he should contact the Fines, Penalties and Forfeitures Officer in order for CBP to determine claimant's financial ability to pay: "If a determination of inability to pay is made, the cost of the bond may be waived in its entirety."[20] Thus, the district court did not err in dismissing the claim.

Because we affirm the district court's dismissal under Rule 12(b)(6) of Serrano's due process class claims for failure to state a claim, we also affirm the denial of his motion for class certification as moot.

---

[20] Serrano has not requested such a waiver, nor does he contend that he was or is unable to afford the bond payment.

### *Bivens Claim*

Serrano additionally argues that dismissal was inappropriate because he properly asserted an individual claim for damages under *Bivens* to vindicate his Fourth and Fifth Amendment rights.

In *Bivens*, the Supreme Court "broke new ground by holding that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim." *Hernandez*, 140 S. Ct. at 741 (citing *Bivens*, 403 U.S. at 388). This holding was issued at a time when, "as a routine matter," the Court "would imply causes of action not explicit in the statutory text" on the assumption that courts could properly "provide such remedies as [were] necessary to make effective" the statute's purpose. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964)). The Supreme Court has since adopted a more cautious approach, honoring separation-of-powers principles and stressing that whether a damages remedy should be created requires consideration of "a number of economic and governmental concerns." *Id.* at 1856. Because of these considerations, Congress is "better position[ed]" than the judiciary "to consider if the public interest would be served by imposing a new substantive legal liability." *Id.* at 1857 (quoting *Schweiker*, 487 U.S. at 426–427). "The Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* (quoting *Iqbal*, 556 U.S. at 675).

Assuming without deciding that a *Bivens* remedy is available in this context, Serrano's complaint fails to state a claim. Serrano's *Bivens* claims are premised on the theory that unnamed CBP officers and a CBP paralegal, Espinoza, violated his constitutional rights by seizing his truck and keeping it for 23 months without giving him an opportunity to contest the seizure in a post-seizure judicial hearing.

At minimum, Serrano failed to plausibly allege that any individual federal defendant has violated clearly established law sufficient to overcome

qualified immunity. Qualified immunity shields government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In order for an official to lose the protections of qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The Supreme Court has held that "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Abbasi*, 137 S. Ct. at 1867 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "[I]f a reasonable officer might not have known for certain that the conduct was unlawful—then the officer is immune from liability." *Id.*

Espinoza is entitled to qualified immunity. Serrano fails to set forth any facts specifically identifying what Espinoza or any unnamed Customs officers did to violate his rights. Instead, Serrano admits that the defendants acted within their authority: Serrano "alleges that the government followed the relevant statutes but that the statutes themselves violate the Constitution." In other words, Serrano concedes that the individual defendants were following the relevant statutes governing the seizure of his truck. Even if we assume that the Constitution required CBP's employees to follow additional or more expedited procedures, there is no existing precedent clearly establishing as much, and thus, the individual defendants are entitled to qualified immunity. *See Kelm v. Hyatt*, 44 F.3d 415, 421 (6th Cir. 1995); *CHS Indus., LLC v. U.S. Customs & Border Prot.*, 653 F. Supp. 2d 50, 57 (D.D.C. 2009).

## IV.

For these reasons, we AFFIRM the judgment of the district court.